# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## CLARK MATTHEW EARLS v. SHIRLEY ANN EARLS

**Extraordinary Appeal from the Circuit Court for Williamson County**
**No. II-98458     Russ Heldman, Judge**

---

**No. M1999-00035-COA-R3-CV - Filed May 14, 2001**

---

This extraordinary appeal involves the efforts of one party to effectuate an opinion of this court which the Tennessee Supreme Court declined to review.   On the first appeal, this court reversed portions of the trial court's final decree and remanded the case with specific directions regarding the details of the order to be entered. After the Tennessee Supreme Court denied the wife's application for permission to appeal, the husband asked the trial court to enter an order consistent with the directions in this court's opinion. After conducting two hearings, the trial court declined to enter the proposed order. We have granted the husband's application for an extraordinary appeal because the trial court, by its refusal to enter a judgment consistent with this court's opinion, has so far departed from the accepted and usual course of judicial proceedings that immediate review of its actions is required.  We now (1) vacate the trial court's orders filed after March 29, 2001, (2) direct the clerk of the trial court to enter this opinion and the order accompanying it as the final order in this proceeding, and (3) direct that this case be assigned to another judge in the Twenty-First Judicial District for any further proceedings.

**Tenn. R. App. 10 Extraordinary Appeal; Judgment of the Circuit Court Vacated and Remanded for Entry of Order**

BEN H. CANTRELL, P.J., M.S., WILLIAM C. KOCH, JR., WILLIAM B. CAIN, and PATRICIA J. COTTRELL, JJ. delivered the opinion of the court.

Thomas F. Bloom and Robyn Ryan, Nashville, Tennessee, for the appellant, Clark Matthew Earls.

P. Edward Schell, Franklin, Tennessee, for the appellee, Shirley Ann Earls.

## OPINION

In mid-1998, Clark Matthew Earls and Shirley Ann Earls agreed that their five-year marriage was over.  They negotiated and signed a marital dissolution agreement, and thereafter, Mr. Earls filed a divorce complaint in the Circuit Court for Williamson County seeking a divorce on the ground of irreconcilable differences.  Ms. Earls later changed her mind about the divorce, and Mr. Earls filed an amended complaint seeking a divorce on the ground of inappropriate marital conduct. Ms. Earls denied that any of her conduct during the marriage was inappropriate and insisted that she did not want a divorce.

The trial court entered its final judgment on April 6, 1999, and Mr. Earls appealed to this court. In an opinion filed May 31, 2000, a majority of this court reversed portions of the trial court's judgment and made specific rulings regarding the content of the order to be entered on remand. *Earls v. Earls*, ___ S.W.3d ___, ___, 2000 WL 696816, at *12 (Tenn. Ct. App. May 31, 2000). The opinion remanded the case to the trial court "with directions to enter an order consistent with this opinion."[1] On June 20, 2000, this court filed an opinion denying Ms. Earls's petition for rehearing. *Earls v. Earls*, ___ S.W.3d ___, 2000 WL 794361 (Tenn. Ct. App. 2000).

Ms. Earls filed a Tenn. R. App. P. 11 application for permission to appeal, but on March 21, 2001, the Tennessee Supreme Court declined to review this court's decision. With this action of the Tennessee Supreme Court, our opinion became controlling authority between the parties under the doctrine of "the law of the case." Tenn. S. Ct. R. 4(H)(1).[2] The Tennessee Supreme Court's mandate, issued to the trial court clerk and the parties on March 29, 2001, stated that the case had been remitted to the trial court and that the mandate "signifies the end of the case."

Mr. Earls asked the trial court to enter an order consistent with this court's May 31, 2000 opinion and submitted a proposed order for the court's consideration. Neither Ms. Earls nor the trial court has indicated that Mr. Earls's proposed order is not consistent with this court's opinion or that the proposed order does not accurately reflect the law of the case. Nonetheless, the trial court failed to enter the proposed order or a similar order. Instead, the trial court held two hearings during which it raised numerous issues regarding the validity of the opinion it had been directed to implement. The trial court also invited the parties to raise issues, and Ms. Earls opposed entry of the order on grounds litigated previously and on grounds raised by the trial court.

On May 4, 2001, Mr. Earls filed a motion in this court "imploring" us to enter a judgment in accordance with our May 31, 2000 opinion because "the continuation of these proceedings is causing him unnecessary financial hardship." We construed Mr. Earls's motion as an application for an extraordinary appeal pursuant to Tenn. R. App. P. 10, and on May 7, 2001, entered an order directing Ms. Earls to show cause why this court should not grant Mr. Earls an extraordinary appeal and why this court should not enter a judgment in accordance with its May 31, 2000 opinion. We also directed the clerk of the trial court to prepare and file a record of the proceedings in the trial court and stayed all proceedings in the trial court pending our disposition of Mr. Earls's application.

Despite the stay, the trial court subsequently entered two orders. One directs the clerk to include in the record prepared for this appeal various documents from the trial court proceedings from the original divorce trial. In the other order, the trial court concludes that this court's May 31,

---

[1] In the judgment accompanying our opinion, we stated that the "trial court's judgment be and is hereby reversed in part and modified in part, and that the cause be remanded to the trial court for further proceedings consistent with this court's opinion."

[2] With the opinion's subsequent publication in the official reporter, it also became controlling authority for all purposes unless and until it is reversed or modified by a court of competent jurisdiction. Tenn. S. Ct. R. 4(H)(2).

2000 opinion was "clearly erroneous" and that to enforce it "against Ms. Earls" at this time would violate her state and federal constitutional rights.[3]

At the risk of understatement, it is clear that the trial court disagrees with our resolution of this case and, by implication, with the Tennessee Supreme Court's decision not to review our decision. Lower courts may disagree with a higher court's decision in a particular case, *Truktax, Inc. v. Hugh M. Gray & Assocs.*, Inc., No. 87-317-II, 1988 WL 123006, at \*2 (Tenn. Ct. App. Nov. 18, 1988) (No Tenn. R. App. P. 11 application filed), and we are confident that disagreement sometimes occurs. It is not the trial court's disagreement with our decision in this case that is remarkable. Rather, it is the trial court's unprecedented actions of (1) refusing to implement a higher court's clear directives in later proceedings in the same case, (2) undertaking to review the correctness of a higher court's decision which has become the law of the case, (3) determining that the higher court's decision is erroneous and, in effect, attempting to overrule it, even though the only court with jurisdiction to do that has declined, and (4) becoming an advocate for the position of one of the parties to the litigation. These actions demonstrate that the trial court has so far departed from the accepted and usual course of judicial proceedings that immediate review of its actions is required. Tenn. R. App. P. 10(a). We respect the trial court's right to disagree with our opinion and do not question the sincerity of his belief in the correctness of his own decision. We are compelled, however, to adhere to the fundamental principles of law that govern all of us in the judicial system and that provide a guarantee of finality to litigants and the public.

One of the controlling principles of our judicial system is that lower courts must abide by the orders, decrees, and precedents of higher courts. *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995). As the Tennessee Supreme Court has aptly noted, the "slightest deviation" from this principle will "disrupt and destroy the sanctity of the judicial process" because "there would be no finality or stability in the law and the court system would be chaotic in its operation and unstable and inconsistent in its decisions. Personal and property rights would be insecure and litigation would know no end." *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976).

Trial courts are required to adhere to and comply with the higher court's decision, even when they do not agree with it. *Barger v. Brock*, 535 S.W.2d at 341. Lower courts may not ignore a higher court's decision, *Truktax, Inc. v. Hugh M. Gray & Assocs., Inc.*, 1988 WL 123006, at \*2, and have no authority to overrule or modify it. *Bloodworth v. Stuart*, 221 Tenn. 567, 572, 428 S.W.2d 786, 789 (1968).

---

[3]The trial court also questioned the appropriateness of this court's treatment of Mr. Earls's motion as a Rule 10 application, but to correct the error he perceived, the trial court construed our order responding to the motion as "inviting entry of an Order of this Court ruling on Mr. Earls's motion to enter a final decree of divorce... so that it [the Court of Appeals] may have a proper basis to consider an extraordinary appeal." *But see* Tenn. R. App. P. 2 (an appellate court may for good cause, including expediting decision, suspend the requirements of any rule and may "order proceedings in accordance with its discretion.").

After a case has been appealed, a trial court does not reacquire jurisdiction over the case until it receives a mandate from the appellate court.[4] Once the mandate reinvests the trial court's jurisdiction over a case, the case stands in the same posture it did before the appeal except insofar as the trial court's judgment has been changed or modified by the appellate court. *Raht v. Southern Ry.*, 215 Tenn. 485, 497, 387 S.W.2d 781, 786 (1965). The appellate court's opinion becomes the law of the case, *Gill v. Godwin*, 59 Tenn. App. 582, 786, 442 S.W.2d 661, 662-63 (1967), foreclosing and excluding any complaint, constitutional or otherwise, as to the issues addressed and decided in the appellate court's opinion. *Cook v. McCullough*, 735 S.W.2d 464, 469 (Tenn. Ct. App. 1987). Thus, the trial court does not have the authority to modify or revise the appellate court's opinion, *McDade v. McDade*, 487 S.W.2d 659, 663 (Tenn. Ct. App. 1972), or to expand the proceedings beyond the remand order. *Cook v. McCullough*, 735 S.W.2d at 470. The trial court's sole responsibility is to carefully comply with directions in the appellate court's opinion. *Raht v. Southern Ry.*, 215 Tenn. at 497-98, 387 S.W.2d at 786-87.

As these authorities make clear, a trial court has no authority, on remand after mandate, to revisit or reopen issues already decided by an appellate court. The trial court was vested with authority to enter an order complying strictly with our remand instructions – no more, no less. The trial court simply has no authority to attempt to review our judgment or to ignore it. The parties are entitled to finality and to be free of additional financial and emotional costs associated with continued proceedings for which there is no authority.

Ms. Earls filed an opposition to Mr. Earls's request for extraordinary appeal. After the trial court's entry of its May 9, 2001 order, she filed a supplemental response agreeing with the trial court's "interpretation of the evidence established at the trial of this case and with his construction of the Tennessee Divorce Statutes." Ms. Earls also asserts that the trial court should be given the opportunity to decide the constitutionality of our application of Tenn. Code Ann. § 36-4-129(b), an issue raised in the first instance by the trial court. We respectfully disagree because these issues have been decided, have been waived, or are without any basis in law to justify further delay and expense to the parties. The issue of whether Mr. Earls provided sufficient proof of grounds for divorce has been litigated, thoroughly reviewed by this court, and decided in our May 31, 2000 opinion and our June 20, 2000 denial of the petition for rehearing. To the extent that Ms. Earls objects to this court's use of the statutory provision allowing courts to declare parties divorced when grounds exist, as an alternative to award of the divorce to one of the parties, she did not raise that objection either in her petition for rehearing or in her application for permission to appeal to the Tennessee Supreme Court. Neither did she challenge the validity of the statute itself in either of those filings.

The trial court's April 17, 2001 order invited the Attorney General and Reporter to brief four issues regarding the constitutionality of this court's application of Tenn. Code Ann. § 36-4-129(b), and the trial court's May 9, 2001 order details its analysis of the issue. The trial court conceives the relief of declaring parties divorced as sufficiently different from that of awarding a divorce to one of the parties as to require a specific request from a party that the court use that remedy. The statute in question provides that upon stipulation or proof of grounds for divorce, a court may "grant a

---

[4]According to Tenn. R. App. P. 42(a), a mandate consists of certified copies of the appellate court's judgment, any order as to costs or instructions as to interest, and the appellate court's opinion.

divorce to the party who was less at fault or, if either or both parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone." Other than existence of grounds, "the statute does not contain any other condition for the exercise of this power." *Valentine v. Valentine*, No. 01A01-9201-CH-00020, 1992 WL 108714, at *1 (Tenn. Ct. App. May 22, 1992) (No Tenn. R. App. P. 11 application filed). As our opinion denying petition for rehearing explained, Tenn. R. App. 36(a) empowers appellate courts to grant the relief to which the parties are entitled, and a majority of this court found there was sufficient evidence of inappropriate marital conduct making continued cohabitation unacceptable. *Earls v. Earls*, 2000 WL 794361, at *1-2. [5]

Therefore, we grant Mr. Earls's application for an extraordinary appeal and grant the requested relief -- entry of a final judgment consistent with our May 31, 2000 opinion. Tenn. R. App. P. 36(a) empowers appellate courts to grant the parties the relief to which they are entitled and to enter any order or judgment necessary to provide this relief. In their discretion, appellate courts may enter judgments when they reverse a trial court's judgment and may also remand cases when issues are left to be decided. *First Tennessee Bank v. Hurd Lock & Mfg. Co.*, 816 S.W.2d 38, 40 (Tenn. Ct. App. 1991) To avoid any further delay in the entry of a final order in this case, we hereby direct that this opinion be filed in the trial court along with the order filed contemporaneously herewith and that they be treated as the final order in this case consistent with the March 29, 2001 mandate of the Tennessee Supreme Court.

The prospect exists that the parties will require further judicial assistance to resolve their present or future disputes, including issues arising from the implementation of the final order entered today. Because this court is one of appellate jurisdiction only, Tenn. Code Ann. § 16-4-108(a)(1) (1994), we recognize the need for a forum for hearing and determining the issues that may arise. In addition, our final judgments are generally remanded to the trial court for further proceedings, including collection of judgment and costs. Tenn. R. Ct. App. 2(b). Accordingly, upon the entry of this opinion and the accompanying order on the minutes of the trial court and the issuance of the mandate, jurisdiction over the case and all related proceedings shall be reinvested in the Circuit Court for Williamson County.

The trial judge who has presided thus far in this case has indicated his unwillingness to enter an order consistent with this court's May 31, 2000 opinion and has also determined that enforcement of that opinion would be unjust to one of the parties. Faced with this clear statement in the record, we can only conclude that the trial judge would find himself unable to enforce this court's order entered today. Since the possibility of future proceedings regarding enforcement of the order clearly exists, both parties must be assured of a decision maker who has not prejudged issues that may arise. *Leighton v. Henderson*, 220 Tenn. 91, 97-98, 414 S.W.2d 419, 421-22 (Tenn. 1967). Accordingly, this case must be assigned to another judge who, if asked to rule on issues regarding the enforcement of the order, will be able to do so unencumbered by a previously stated position.

---

[5]In addition to its concerns with the propriety of this court's use of the statute allowing courts to declare parties divorced, in its May 9, 2001 order, the trial court states that Mr. Earls's proof "did not constitute inappropriate conduct." Thus, the trial court continues to disagree with our conclusion to the contrary, an issue which is beyond redetermination.

An expression of opinion of the merits of the case prior to hearing the evidence is indicative of bias. Remarks which suggest that the judge has taken a position favorable or unfavorable to a party also indicate bias. . . . When a trial court's comments indicate that the judge has prejudged factual issues, Tennessee courts have required disqualification. "In the trial of any lawsuit the judge must be careful not to give an expression to any thought, or to infer what his opinion would be in favor or against either of the parties in the trial."

*Alley v. State*, 882 S.W.2d 810, 822 (Tenn. Crim. App. 1994) (citations omitted).

Another of our judicial system's controlling principles is that all litigants have a right to have their cases heard and decided by fair and impartial judges. Accordingly, the Tennessee Supreme Court has repeatedly reminded us that litigants are entitled to the "cold neutrality of an impartial court." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001); *Leighton v. Henderson*, 220 Tenn. at 98, 414 S.W.2d at 421; *Chumbley v. People's Bank & Trust Co.*, 165 Tenn. 655, 659, 57 S.W.2d 787, 788 (1933). A trial before a biased or prejudiced judge is a denial of due process. *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998). Accordingly, judges must conduct themselves "at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Tenn. S. Ct. R. 10, Canon 2(A).

It is of immense importance not only that justice be administered impartially but also that the public perceive that it is being administered impartially. *In re Cameron*, 126 Tenn. 614, 658-59, 151 S.W. 64, 76 (1912). Thus, as the Tennessee Supreme Court has recently observed, "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d at 565. Accordingly, judges should recuse themselves in circumstances where their "impartiality might reasonably be questioned." Tenn. S. Ct. R. 10, Canon 3(E)(1). Judicial recusal is called for "when an ordinary person in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d at 564; *Alley v. State*, 882 S.W.2d at 820.

Applying the objective test of *Davis v. Liberty Mut. Ins. Co.* to these proceedings, we must conclude that the current trial judge's conduct would lead an ordinary person in the trial judge's position, knowing all the relevant facts, to reasonably question the trial judge's impartiality in any future proceedings in this case on two grounds. The first ground is the trial court's declaration that enforcement of this court's order would be unjust to Ms. Earls, thereby evidencing his prejudgment of enforcement issues which might arise in the future. The second ground lies in the judge's advocacy on behalf of his prior decision and, therefore, on behalf of one of the parties, beginning almost immediately after release of this court's opinion, as first evidenced by a lengthy, ex parte letter dated June 9, 2000, that the trial judge sent to all four judges of the Middle Section of the Court of Appeals.[6] That letter stated that this court's May 31, 2000 opinion denied Ms. Earls "the right to be heard according to law" and primarily consisted of a discussion of the ways in which our opinion

---

[6]The trial judge did not provide the lawyers for the parties with a copy of this letter, although he informed them that he had written it. Upon receipt of the trial court's letter, this court provided copies to the parties for their information.

- 6 -

was in error, primarily our misreading and misapplication of the law, with legal citation and legal argument.[7] This letter, which is without precedent, demanded the withdrawal of the May 31, 2000 opinion.[8] The only conclusion to be drawn from an objective and fair reading of this letter is that the trial judge was no longer a neutral arbiter of the disputes between the parties but rather had assumed the role as an advocate for Ms. Earls.

Further reason for reasonably questioning the trial judge's impartiality lies in his unwarranted refusal to enter a final order in this case in accordance with the Tennessee Supreme Court's March 29, 2001 mandate. Despite the parties' agreement that the proposed order prepared by Mr. Earls's lawyer followed this court's May 31, 2000 opinion, the trial judge has declined in two hearings to enter a final order because of issues the judge has raised himself which are outside the bounds of the remand and are now either waived or extraneous. Finally, the trial court has entered an order declaring this court's opinion clearly erroneous, which can only be interpreted as advocating one party's position over the other's. In and of itself, this order would cause a reasonable person to question the judge's ability to be impartial in any further proceedings involving these parties.

While we are fully aware of the gravity of our decision in this regard, our reluctance to address this delicate matter is outweighed by the parties' and the public's right to have judicial proceedings determined by persons whose impartiality cannot reasonably be questioned. Accordingly, should either party in the future seek judicial relief regarding the portions of the trial court's April 6, 1999 order affirmed by this court, this court's May 31, 2000 opinion, this court's June 20, 2000 opinion denying Ms. Earls's petition for rehearing, this opinion, or the order filed contemporaneously herewith, the case shall be reassigned to another judge of the Twenty-First Judicial District.

In summary, we grant Mr. Earls's application for an extraordinary appeal. We vacate the trial court's orders filed after March 29, 2001. To avoid further needless delay and expense to both parties, and in accordance with our power under Tenn. R. App. P. 36(a), we direct that a certified copy of this opinion and the order filed contemporaneously herewith be entered as the final judgment in the records of the Circuit Court for Williamson County. We further order that jurisdiction over this case shall be reinvested in the Circuit Court for Williamson County once this opinion and related order have been filed and the mandate issued. In accordance with our authority under Tenn. R. App. P. 42(a), we order that the mandate issue ten days following the filing of this opinion unless stayed

---

[7]The letter also objects to language in the opinion which the trial judge felt constituted unwarranted criticism of him and violated various provisions of the Code of Judicial Conduct. We do not interpret these concerns, and their associated request for modification and apology, as advocacy on the merits of the litigation.

[8]Similar ex parte communications by a trial judge to an appellate judge, made before the time for petition to rehear had expired, in which the trial judge advised the appellate judge that the appellate court's decision was wrong, asked for review of it, and indicated further appellate review would be sought, were found by one state's highest court to be indicative of "an impermissible personal involvement in the litigation" and a "wholly improper concern with the protection of his own rulings from appellate reversal." *Roberts v. Commission on Judicial Performance,* 661 P.2d 1064, 1068 (Cal. 1983). An impartial tribunal is not a party with a real or protectable interest in the outcome of litigation. Thus, a trial judge who becomes so invested in the outcome as to advocate what that outcome should be or to take steps to change an outcome he or she disagrees with loses any impartiality or appearance of impartiality.

by the Tennessee Supreme Court.  Finally, we order that the current trial judge be disqualified from this case and that any future proceedings involving this case be heard by another judge of the Twenty-First Judicial District.

We have determined that it would be inappropriate to burden the parties with the costs of this extraordinary appeal, especially the costs associated with the lengthy and unnecessary record filed at the trial judge's direction.  Accordingly, exercising our authority under Tenn. R. App. P. 40(a), we order that all costs associated with this extraordinary appeal are waived in the interests of justice.


PER CURIAM


_____
BEN H. CANTRELL, P.J., M.S.

_____
WILLIAM B. CAIN, J.


_____
WILLIAM C. KOCH, JR., J.

_____
PATRICIA J. COTTRELL, J.